# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TROY ADAM SHADE,** | : | **CIVIL NO. 1:18-CV-1429** |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| v. | : | |
| **STANLEY STANISH,** *et al.*, | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Troy Adam Shade ("Shade"), an inmate housed at the State Correctional Institution, Retreat, in Hunlock Creek, Pennsylvania ("SCI-Retreat"), commenced this action pursuant to 42 U.S.C. § 1983. (Docs. 1, 6). Named as defendants are Stanley Stanish and Brian Dougherty (together, "the medical defendants"), and James C. Barnacle, Vincent Mooney, Thomas Serbin, Pamela Smith, and Dorina Varner (collectively, "the corrections defendants"). (Id.) Pending before the court is a motion (Doc. 44) to dismiss filed by the medical defendants, and a motion (Doc. 52) to dismiss or, in the alternative, for summary judgment filed by the corrections defendants.[1] Shade failed to respond to

---

[1] The corrections defendants move for summary judgment based on Shade's purported failure to exhaust administrative remedies in accordance with the Prison Litigation Reform Act of 1996, 42 U.S.C. § 1997e(a). (Doc. 53, at 3-9). Because the court finds that Shade's claims against the corrections defendants fail as a matter of law, we need not address the exhaustion argument.

defendants' motions and the time for responding has now passed.[2] Therefore, the motions are deemed unopposed and ripe for resolution. For the reasons set forth below, the court will grant defendants' motions and dismiss the complaint with leave to amend.

I. **Allegations of the Complaint**

Shade asserts that he is an undercover law enforcement agent working with the Federal Bureau of Investigation and the Department of Justice. (Doc. 6 ¶¶ 1, 12). He alleges that he is illegally confined in state custody. (Id. at ¶¶ 1, 13).

Defendant Dr. Stanish is a physician at SCI-Retreat. (Id. at ¶ 19). Shade alleges that, on July 20, 2016, Dr. Stanish verbally and physically abused him at a medical appointment. (Id. at ¶¶ 2, 14). At this appointment, Shade was treating with Dr. Stanish regarding his prescription medications. (Id. at ¶ 24). Dr. Stanish allegedly stated that he would not prescribe Shade's medications under "keep on person" ("KOP") status. (Id.) Shade contends that Dr. Stanish was "extremely obnoxious", and told him, "who the hell do you [ ] think you [ ] are"; "what do you [ ] think you['re] the V.I.P. here"; "I will make sure you [ ] will not do this again"; and "you [ ] are a fricken idiot." (Id. at ¶¶ 25, 26). Shade alleges that these statements were verbal threats and constituted verbal abuse. (Id. at ¶¶ 19, 23-25). Shade also alleges that Dr. Stanish physically abused him by kicking Shade in his left foot, and

---

[2] Shade was granted an extension of time to file briefs in opposition to defendants' motions and was admonished that failure to file opposition briefs would result in defendants' motions being deemed unopposed. (Doc. 61 ¶ 3) (citing M.D. PA. LOCAL RULE OF COURT 7.6). (See also Doc. 5, Standing Practice Order in Pro Se Plaintiff Cases, at 2).

2

while walking towards the office door, turned around with a fist and said, "I will get you for this." (Id. at ¶ 26). Dr. Stanish then left the office. (Id.) Shade states that Dr. Stanish returned to the office and advised Shade that he could pick up the KOP medication at the pharmacy. (Id. at ¶ 26). Shade further alleges that Dr. Stanish "seized" or "detained" him in his office for approximately thirty (30) minutes, and that his actions were motivated by Shade filing a grievance against the Psychology Department related to his medication. (Id. at ¶¶ 32-33, 38). Additionally, Shade avers that Dr. Stanish willfully failed to perform his professional duties and provide adequate medical care. (Id. at ¶ 27).

Shade alleges that defendant Dougherty, vice president of Correct Care Solutions, LLC ("CCS"), located in Nashville, Tennessee, is Dr. Stanish's employer and should be held legally liable for Dr. Stanish's actions. (Id. at ¶¶ 3, 18, 53). He contends that defendant Dougherty failed to perform a proper background check of Dr. Stanish and failed to discipline and take action to terminate his employment. (Id. at ¶¶ 55-57). Shade seeks relief against defendant Dougherty in his individual capacity and against CCS for Dr. Stanish's actions on July 20, 2016. (Id. at ¶ 58).

Shade filed a grievance complaining about the alleged physical and verbal abuse by Dr. Stanish in July 2016. (Id. at ¶ 15). On initial review, defendant Serbin denied the grievance. (Id. at ¶ 16). Shade filed an appeal to the Facility Manager, defendant Mooney, who upheld the denial of the grievance. (Id. at ¶ 17). Shade then filed an appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). (Id. at ¶ 95). Defendant Varner, Chief Grievance Officer of the SOIGA, upheld the denial of his grievance. (Id.)

3

Defendant Barnacle, captain of the Office of Special Investigations and Intelligence ("OSII"), investigated Shade's allegations against Dr. Stanish. (Id. at ¶ 75). Defendant Barnacle ultimately determined that the allegations were unfounded. (Id.)

Shade alleges that the corrections defendants willfully turned a blind eye to the actions of Dr. Stanish and failed to properly investigate his claims against Dr. Stanish. (Id. at ¶¶ 18, 100).

## II.  **Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp.

4

v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

## III. Medical Defendants' Motion

### A. Eighth Amendment Claims against Defendant Stanish

#### 1. *Verbal and Physical Abuse*

A prison official violates the Eighth Amendment when: (1) the prisoner suffers an objectively, sufficiently serious deprivation; and, (2) the prison official acts with deliberate indifference to the prisoner's health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Fortune v. Hamberger, 379 F. App'x 116, 122 (3d Cir. 2010) (stating, "an inmate [is required] to show that 'he is incarcerated under

5

conditions posing a substantial risk of serious harm,' and that prison officials demonstrated a 'deliberate indifference' to his health or safety"). Under the first element, a "prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" Farmer, 511 U.S. at 834. To establish deliberate indifference under the second element, the prison official must: (1) know of and disregard an excessive risk to inmate health or safety; (2) be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists; and (3) draw the inference. Id. at 837.

Shade alleges that defendant Stanish was obnoxious and verbally abusive on July 20, 2016. Defendant Stanish allegedly stated, "who the hell do you [ ] think you [ ] are"; "what do you [ ] think you['re] the V.I.P. here"; "I will make sure you [ ] will not do this again"; and "you [ ] are a fricken idiot." (Doc. 6 ¶¶ 25, 26). Defendant Stanish's alleged statements to Shade, without any accompanying physical injury, do not amount to malicious behavior violative of the Eighth Amendment. See Dunbar v. Barone, 487 F. App'x 721, 723 (3d Cir. 2012) ("[V]erbal threats or taunts, without more, are not sufficient to constitute a violation of the Eighth Amendment."); Quiero v. Muniz, No. 14-225, 2015 WL 13738994, at *5 (M.D. Pa. Aug. 3, 2015) ("Allegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under § 1983, regardless of whether the inmate is a pretrial detainee or sentenced prisoner."). This claim fails because Shade cannot state a claim for cruel and unusual punishment under the Eighth Amendment by alleging only verbal harassment or threats.

Shade also alleges that defendant Stanish kicked his foot, made a fist, and said, "I will get you for this." (Doc. 6 ¶ 26). Section 1997e(e) of Title 42 provides: "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). More than a *de minimis* physical injury must be alleged as a predicate to allegations of mental or emotional injury. See Mitchell v. Horn, 318 F.3d 523, 536 (3d Cir. 2003). Shade admits that he was wearing his prison boots during this incident, which protected his foot from being injured by defendant Stanish's alleged kick. (Doc. 6 ¶ 43). Shade has failed to allege that he suffered more than a *de minimis* injury as a result of the kick, as required for a predicate to emotional injury. See Mitchell, 318 F.3d at 534-36.

Based on the foregoing, the court will dismiss Shade's Eighth Amendment claim against defendant Stanish for verbal harassment, threats, and kicking, with leave to amend.

### 2. *Deliberate Indifference to Serious Medical Needs*

In order to establish an Eighth Amendment medical claim, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003) (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention." Monmouth Cty. Corr. Institutional

7

Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id. (citation omitted). A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. See Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988); see also McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976), *cert. denied*, 450 U.S. 1041 (1981).

Shade appears to allege that defendant Stanish was deliberately indifferent to a serious medical need by initially refusing to order his medications as keep on person. (Doc. 6 ¶¶ 23-24, 26, 28). However, Shade concedes that the Psychology Department, not defendant Stanish, "took" his KOP medications away from him. (Id. at ¶ 23). Shade further concedes that defendant Stanish ultimately agreed to order his medications as KOP. (Id. at ¶ 26).

If defendant Stanish had removed Shade from a keep on person medication regime and ordered that his medications be administered through direct observation, it would be an exercise of medical judgment. While Shade may have

8

disagreed with the manner in which his medication was distributed, this does not rise to a constitutional violation. Disagreements as to the proper course of medical treatment will not satisfy the deliberate indifference standard. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (holding that "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation); Monmouth Cnty. Corr. Institutional Inmates, 834 F.2d at 346. Moreover, courts will not second guess whether a particular course of treatment is adequate or proper. See Parham v. Johnson, 126 F.3d 454, 458 n.7 (3d Cir. 1997) (quoting Inmates of Allegheny Cty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)).

Shade has failed to allege that defendant Stanish acted with deliberate indifference to his medical needs. Shade's disagreement with defendant Stanish's brief direction that his medications be administered by medical staff does not invoke the Eighth Amendment. See Hartman v. Corr. Med. Serv., 366 F. App'x 453, 455 (3d Cir. 2010) (dismissing plaintiff's complaint as not based on an Eighth Amendment deliberate indifference theory when "his allegations reflect his frustrations with repeated occurrences of medication lapses, as well as his disagreement with the manner in which defendant . . . directed that all of [plaintiff]'s medications be administered by medical staff"). Furthermore, Shade has not alleged that defendant Stanish's conduct resulted in any medication lapses that caused his health to suffer. The court will dismiss this claim, but grant Shade leave to amend to adequately state a cognizable Eighth Amendment deliberate indifference claim.

9

### B. Fourth Amendment Claim against Defendant Stanish

Shade alleges that defendant Stanish violated his rights under the Fourth Amendment by detaining and seizing him in his office for approximately thirty (30) minutes. (Doc. 6 ¶¶ 23, 32). The Fourth Amendment provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. The prohibitions contained within the Fourth Amendment are applicable to the states by virtue of the Due Process Clause of the Fourteenth Amendment. Cady v. Dombrowski, 413 U.S. 433, 440, 93 S.Ct. 2523, 2527, 37 L.Ed.2d 706, 714 (1973).

On July 20, 2016, defendant Stanish treated Shade in the medical department for approximately thirty (30) minutes. (Doc. 6 ¶ 26). Shade does not allege that defendant Stanish forbade him from leaving the office. At one point during the visit, Shade alleges that defendant Stanish left the office, but Shade does not allege that defendant Stanish locked him inside, nor does he allege that defendant Stanish told him that he could not leave. (Id.) The court finds that Shade failed to allege a violation of his Fourth Amendment rights. The medical defendants' motion to dismiss will be granted with respect to Shade's Fourth Amendment claim.

### C. Fourteenth Amendment Claims against Defendant Stanish

The medical defendants argue that, to the extent Shade raises Fourteenth Amendment substantive due process claims, these claims are subject to dismissal. (Doc. 44, at 11, 15). In adopting the "more-specific-provision-rule" established in

County of Sacramento v. Lewis, 523 U.S. 833, 843-44 (1998), the Third Circuit noted that "[u]nder this rule, 'if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.' United States v. Lanier, 520 U.S. 259, 272 n. 7, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) (clarifying prior holing in Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989))." Betts v. New Castle Youth Development Center, 621 F.3d 249, 260-61 (3d Cir. 2010). Because Shade's verbal and physical abuse claims fit within the Eighth Amendment claim, and his illegal seizure claim fits squarely within the Fourth Amendment claim, the more-specific-provision rule forecloses any substantive due process claims.

### D. First Amendment Claim against Defendant Stanish

Shade alleges that defendant Stanish attempted to prevent him from filing or appealing a grievance and harassed him in retaliation for filing a grievance against the Psychology Department staff. (Doc. 6 ¶¶ 31, 32). The First Amendment offers protection for a wide variety of expressive activities. See U.S. CONST. amend I. These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct. See Turner v. Safley, 482 U.S. 78, 89 (1987). Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment. See Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000). To prevail on a retaliation claim under 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) that he was engaged in constitutionally protected activity; (2) that

11

he suffered an "adverse action" by government officials; and (3) that there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him." Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225).

As to the first element, the medical defendants concede for purposes of the instant motion that Shade satisfies the first prong of the Rauser test by alleging that he was engaged in constitutionally protected activity—the exercise of his right under the First Amendment to file grievances. (Doc. 44, at 18). See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003).

In analyzing the second element of Rauser, however, Shade must show that there was an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights. Rauser, 241 F.3d at 333. In accepting as true all factual allegations set forth in the complaint, it is clear that Shade fails to meet the second Rauser element. Shade asserts that he suffered adverse action in the form of being verbally harassed and kicked because defendant Stanish was allegedly upset that Shade filed a grievance against the Psychology Department staff. General verbal harassment and antagonizing have been found not to constitute an actionable adverse action. See Marten v. Hunt, 479 F. App'x 436 (3d Cir. 2012). Further, Shade's own statements in the complaint reveal that he was not deterred by any alleged adverse actions because he states that he continued to file a grievance related to the July 20, 2016 incident. (Doc. 6 ¶¶ 15-17, 20). Shade thus demonstrates that he was not deterred from exercising his First Amendment rights, but rather continued to do so. It is clear that Shade was not deterred from

exercising his First Amendment rights by the alleged adverse actions of defendant Stanish.  For these reasons, the medical defendants' motion to dismiss the retaliation claim will be granted with leave to amend.

E.      **Claims against Defendant Dougherty**

The medical defendants argue that Shade fails to state a claim against defendant Dougherty because he lacks personal involvement in the alleged wrongs, the allegations against him are based on the doctrine of *respondeat superior*, and as a nonmedical defendant, he cannot be held liable under the Eighth Amendment. (Doc. 44, at 20-22).

Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." Evancho, 423 F.3d at 353 (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . .  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207-08; see also Rizzo v. Goode, 423 U.S. 362 (1976); Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003).  Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. Evancho, 423 F.3d at 354; Rode, 845 F.2d at 1207-08.  Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. Rode, 845 F.2d at 1208.

It appears that Shade attempts to hold defendant Dougherty liable for the actions of defendant Stanish, based on his supervisory role as vice president of CCS. However, it is well-established that officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior*. See Rode, 845 F.2d at 1207. Accordingly, the claims against defendant Dougherty will be dismissed to the extent that Shade's deliberate indifference claim relies on a *respondeat superior* theory of liability.

Additionally, for purposes of Eighth Amendment medical claims, nonmedical staff may not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993); see also Spruill, 372 F.3d at 236. Courts have repeatedly held that, absent some reason to believe that prison medical staff are mistreating prisoners, non-medical corrections staff who refer inmate medical complaints to physicians may not be held personally liable for medically-based Eighth Amendment claims. See, e.g., Spruill, 372 F.3d at 236-37 (citing Durmer, 991 F.2d at 69); Garvey v. Martinez, No. 08- 2217, 2010 WL 569852, at *6-7 (M.D. Pa. 2010); Hodge v. United States, No. 06-1622, 2007 WL 2571938, at *5-6 (M.D. Pa. 2007).

With respect to this nonmedical defendant, Mr. Dougherty, Shade fails to establish a viable claim. Defendant Dougherty is the vice president of CCS and is not a trained member of medical staff subject to liability for an Eighth Amendment claim. A review of the complaint confirms that that there are no specific asserts that defendant Dougherty had any involvement in the medical care at SCI-Retreat

14

or that defendant Dougherty was aware of the events of July 20, 2016, nor does Shade allege that defendant Dougherty is Dr. Stanish's direct supervisor. (See Doc. 6 ¶¶ 53-59). Because Shade was under the regular care of medical experts, defendant Dougherty was justified in believing that he was in capable hands. See Spruill, 372 F.3d at 236; Durmer, 991 F.2d at 69. For all the foregoing reasons, the court will grant the medical defendants' motion with respect to the claims against defendant Dougherty.

### F. Monell Claim against Correct Care Solutions, LLC

Shade's complaint purports to raise a Monell claim against CCS, the company that employs defendants Stanish and Dougherty. (Doc. 6 ¶¶ 53-58). Under § 1983, a private corporation contracted by a prison to provide healthcare for inmates cannot be held liable on *a respondeat superior* theory; rather, a plaintiff must allege that the entity had a policy, practice, or custom which caused injury to the plaintiff. Adonai-Adoni v. King, No. 07-3689, 2009 WL 890683, at *2 (E.D. Pa. Mar. 31, 2009) (noting that a private medical provider can only be liable under § 1983 if claim rests "upon some policy, practice or custom"); see also Carpenter v. Kloptoski, No. 1:08-CV-2233, 2010 WL 891825, at *8 (M.D. Pa. Mar. 10, 2010) (concluding that a § 1983 claim against a private medical service solely on the basis that it was responsible for providing health care is subject to dismissal). Shade alleges that CCS is contracted with the Pennsylvania Department of Corrections to provide medical services to inmates at state prisons, and that CCS employs defendant Dougherty as vice president and defendant Stanish as a medical doctor.

(Doc. 6 ¶¶ 53-58). Shade fails to allege any facts demonstrating that any perceived deficiency in his medical treatment may be the result of CCS' policies, customs, or practices. The complaint does not even identify any CCS policies or procedures that may be at issue. Consequently, the Monell claim will be dismissed with leave to amend.

IV. **Corrections Defendants' Motion**

Shade's allegations that the corrections defendants violated his rights merely because they supervised other defendants, or because they allegedly failed to properly address his grievances and appeals, without more, is insufficient to show personal involvement by these prison officials absent some other evidence that these defendants personally engaged in conduct that violated Shade's constitutional rights.

In order to state an actionable civil rights claim, a plaintiff must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. See Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990). As stated *supra*, individual liability can be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." Evancho, 423 F.3d at 353 (quoting Rode, 845 F.2d at 1207. To the extent that Shade attempts to hold defendant Mooney liable based upon his supervisory role within the prison, this claim is subject to dismissal.

16

Shade alleges that defendant Mooney failed to perform "his [o]fficial [d]uties as the Facility Manager/ Superintendent of SCI-Retreat." (Doc. 6 ¶ 84). This claim is, in essence, nothing more than an assertion of *respondeat superior* liability which seeks to hold defendant Mooney liable based on his supervisory role. This ground of constitutional liability has been squarely rejected by the courts. See Rode, 845 F.2d at 1207. Similarly, any attempt by Shade to hold the corrections defendants liable based on their alleged failure to discipline defendant Stanish is insufficient to establish personal involvement. Shade has not alleged facts to show that the supervisory defendants committed actionable violations of his constitutional rights. Consequently, the corrections defendants' motion to dismiss on the basis of lack of personal involvement will be granted.

Shade also seeks to hold the corrections defendants liable based upon their interference with, and hinderance of, the prison grievance system. This claim fails because inmates do not have a constitutionally protected right to a prison grievance system. See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977) (Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); Speight v. Sims, 283 F. App'x 880, 881 (3d Cir. 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")).

Nor can Shade impose liability on the corrections defendants based upon their roles in reviewing and responding to his grievances. It has long been recognized that a state prisoner's allegation that prison officials and administrators

responded inappropriately, or failed to respond, to a prisoner's complaint or grievance, is insufficient to establish personal involvement in the underlying unconstitutional conduct. See Rode, 845 F.2d at 1207-1208 (concluding that after-the-fact review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal involvement); Simonton v. Tennis, 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right"); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that allegations that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct).

In accordance with the foregoing, any attempt by Shade to establish liability against the corrections defendants based upon their interference with the prison grievance system, or their handling of Shade's administrative grievances or complaints does not support a constitutional claim. See Alexander v. Gennarini, 144 F. App'x 924, 925 (3d Cir. 2005). Accordingly, the complaint against the corrections defendants will be dismissed.

## V. **Leave to Amend**

"The obligation to liberally construe a *pro se* litigant's pleadings is well-established." Haines v. Kerner, 404 U.S. 519, 520-21 (1972); see also Higgs v. Atty. Gen. of the U.S., 655 F.3d 333, 339 (3d Cir. 2011) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)). "[I]n civil rights cases district courts must offer amendment—

irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." Fletcher-Harlee Corp. v. Pote Concrete Contractors., Inc., 482 F.3d 247, 251 (3d Cir. 2007); see also Foman v. Davis, 371 U.S. 178, 182 (1962). Amendment is futile "if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss." Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 292 (3d Cir. 1988); see also Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) (stating that "[i]n assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)."). For the reasons outlined above, Shade's Fourth and Fourteenth Amendment claims, and claims against defendant Dougherty and the corrections defendants are legally and factually flawed and thus incurable; for these reasons, the court concludes that curative amendment would be futile with respect to these claims. However, Shade will be afforded an opportunity to amend his Eighth Amendment claim, First Amendment claim, and Monell claim.

## VI. Conclusion

For the reasons set forth above, the court will grant defendants' motions (Docs. 44, 52) to dismiss. The court will grant Shade an opportunity to file an amended complaint in the event he can state a plausible claim for relief.

An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: February 21, 2020